Francisco **GARZON**, Petitioner,

v.

**DISTRICT OF COLUMBIA COMMIS-
SION ON HUMAN RIGHTS,**
Respondent,

**Marriott Corporation, Intervenor.**

No. 89–701.

District of Columbia Court of Appeals.

Argued Feb. 14, 1990.
Decided July 24, 1990.

---

Joseph V. Kaplan, Silver Spring, Md., with whom Robert Lubin, Alexandria, Va., was on the briefs, for petitioner.

Julienne W. Bramesco, with whom Carlton J. Trosclair, Bethesda, was on the brief, for intervenor.

Before ROGERS, Chief Judge, and NEWMAN and FERREN, Associate Judges.

FERREN, Associate Judge:

Francisco Garzon petitions for review of a Final Decision and Order of the District of Columbia Commission on Human Rights granting a motion to enforce a settlement—based on an oral agreement—between Garzon and Marriott Corporation. After a hearing on liability, the Commission determined that Marriott unlawfully had discriminated against Garzon, on the basis of gender, in terminating his employment. Before completion of the hearing on damages, however, the parties' attorneys conferred on possible terms of settlement. Garzon, it appears, reluctantly agreed to

settle for $18,000 plus attorney's fees. Marriott then drafted its understanding of the settlement agreement. Although providing for payment of $18,000, Marriott's draft failed to provide for payment of Garzon's attorney's fees. The draft also added several clauses which, according to Garzon, were material provisions not discussed during the settlement conference and to which he did not agree.

Marriott moved to enforce the settlement agreement. The Commission granted Marriott's motion, finding that Garzon had agreed to settle for $18,000 and to release Marriott from all liability. The Commission acknowledged that the parties still had "to negotiate the wording of [a] mutually acceptable release," but, by ruling that an enforceable agreement had been reached, the Commission necessarily implied that the parties had agreed to all material forms of the settlement. We cannot agree. A "mutually acceptable release" under the circumstances would have to include material terms which, as far as we can tell from the record, may not yet have been agreed upon. Accordingly, we conclude that the Commission erred in granting a motion for enforcement of what appears on this record to be an unenforceable agreement to agree. We therefore must reverse the agency's decision and remand for further proceedings.

This is not to say, however, that the settlement issue can be resolved on the present record. By ruling on Marriott's motion for enforcement of settlement entirely on the basis of affidavits and correspondence, without a hearing, the Commission did not have sufficient data, including essential demeanor evidence or other indicia of truthfulness essential to resolving material factual disputes. Accordingly, on remand, if Marriott still elects to contend there was an enforceable settlement agreement, the Commission shall afford the parties an evidentiary hearing. If the alleged settlement is not established, the Commission shall assess damages against Marriott either on the basis of the hearing record already completed or after further hearing, in the Commission's discretion.

### I.

Marriott hired Garzon in February 1981 as a host in the Washington Marriott Hotel lounge. In April 1981, Marriott promoted Garzon to the position of bartender. On October 28, 1983, Marriott terminated his employment. Garzon filed a complaint against Marriott with the District of Columbia Office on Human Rights on January 6, 1984, alleging sex discrimination in violation of the District of Columbia Human Rights Act, D.C.Code § 1–2512(a)(1) (1987). On November 14, 1986, in its Final Decision and Order, the Commission ruled in Garzon's favor, concluding that Marriott had unlawfully terminated his employment because he is male. The Commission ordered "that [Marriott] provide such remedy as is determined by subsequent public hearing on damages and attorney's fees to be appropriate and awardable to [Garzon] in accordance with the Act and the Commission's Guidelines For Payment of Compensatory Damages and Attorney's Fees."

The hearing on damages began on February 17, 1988. The next morning, counsel for Marriott and counsel for Garzon met to discuss settlement. Each of the participants has a somewhat different version of what happened next.[1] Garzon's attorney, H. Vincent McKnight, Jr., states (in a letter to Garzon dated March 1, 1988): "I recommended settlement. After lengthy discussions ..., [Garzon] gave me the authority to settle this case for $18,000 plus attorney's fees. I communicated this to the other side and Marriott agreed." Garzon states (in a letter to the Commission dated April 28, 1989):

The $18,000 damage settlement Mr. McKnight tried to get me to accept was never acceptable to me. Mr. McKnight spent over an hour trying to convince me. At one point during his coercion, he mentioned he might "be able to do some-

---

1. These accounts of the events are gleaned from letters and affidavits in the record, as no evidentiary hearing was ever held on this matter.

thing" with his lawyer's fees (to make the settlement more attractive to me). The reason I finally said "I guess" was that he got up from his chair and said, "I'm going to go ahead and do it" (accept the settlement). If I had been able to think clearly at that point or know my options, I would never even have said "I guess." I certainly did not believe that I was accepting that amount, nor did I believe it to be binding.

Garzon also states in an affidavit that, on February 18, 1988, he was not told about— nor did he agree to—terms releasing Marriott from liability arising out of his termination, relinquishing the right to reinstatement, requiring nondisclosure of the terms of the agreement, and establishing liquidated damages in the event of disclosure. Carlton J. Trosclair, attorney for Marriott, states (in an affidavit):

> During negotiations, I represented to Mr. McKnight that any settlement would be a total settlement, and that there would be no reinstatement and no disclosure to the media.... Mr. McKnight indicated he understood.
>
> After about two hours of negotiation, I offered Mr. Garzon's counsel, Mr. McKnight, $18,000 for a total settlement of the case. Mr. McKnight said he would have to talk to his client.
>
> Some time later, Mr. McKnight returned to me and said that he accepted the offer on behalf of his client.

(Paragraph enumeration omitted.) At 11:15 a.m. the parties returned to the hearing room; the transcript indicates that each attorney confirmed to the hearing examiner that "the parties have reached a settlement agreement." The examiner continued the hearing "until such time ... as I am further advised as to the status of the case."

Within twenty-four hours, Garzon notified both the hearing examiner and McKnight that he did not want to enter into the agreement. According to Garzon, he had understood "that everything would be put in writing" and that "nothing would be binding on [him] until [he] had a chance to read over everything that [he] was ... agreeing to." When Garzon refused to sign a statement prepared by his attorney agreeing to "abide by the settlement agreement"—characterized by McKnight in an attached letter as "$18,000 plus attorney's fees"—McKnight withdrew from representation.

Eventually Marriott prepared a document purporting to memorialize the settlement reached on February 18. The document, entitled "Settlement Agreement and Release of All Claims," contained clauses by which Garzon, in consideration of $18,000, was to: release Marriott from all present and future liability arising out of his employment and termination by Marriott; covenant not to sue Marriott on any matter arising out of his termination; agree to indemnify and hold harmless all parties on any claim arising out of his termination; acknowledge that Marriott was not admitting to any wrongful conduct; agree never to be employed by, or to seek employment with, Marriott; agree never to reveal any term of the agreement to anyone; agree to respond "no comment" if contacted by any of the news media about the settlement; and agree to pay Marriott liquidated damages of $18,000 in the event of breach of the confidentiality provisions. The document did not provide for payment of Garzon's attorney's fees. According to Garzon's brief on appeal, Marriott never presented him with this document. According to Marriott's brief, the document is the settlement, reduced to writing, which Garzon had agreed to accept but was unwilling to sign.[2]

On January 10, 1989, the hearing on damages reconvened. Counsel from the Office of Human Rights (OHR) was present, "representing the Office" but also,

---

2. Although we may assume from the withdrawal of attorney McKnight that Garzon did refuse to "abide by the settlement agreement" of $18,000 plus attorney's fees, we are unable to determine whether Garzon or McKnight saw the document prepared by Marriott in contemplation of settlement. Even though Garzon stated in a letter to McKnight that he "chose not to sign the settlement agreement," it is not clear whether Garzon was referring to the document prepared by Marriott or to the statement prepared by McKnight.

in effect, representing Garzon. On that day, Marriott moved for "Enforcement of Settlement." The hearing examiner allowed OHR time to respond in writing to Marriott's motion but asked for completion of the testimony on damages (begun in February 1988) so that no further evidence would be needed in the event the Commission denied Marriott's motion. Within fifteen days after the hearing, OHR filed its opposition to Marriott's motion.

On June 8, 1989, the Commission granted Marriott's motion, finding that Garzon had accepted the offer on February 18, 1988, and had "agreed to resolve the issues in this matter for payment of $18,000, intending in consideration therefore to grant respondent a full release from any liability arising from the termination of his employment from the Marriott Corporation." The Commission further ordered "that the complainant through counsel, shall have an opportunity to negotiate the wording of [a] mutually acceptable release containing the essential terms set out above representing the agreement reached on February 18, 1988," and "that the parties [shall] negotiate the mutually acceptable release as ordered above within thirty days of receipt of this decision and order."

## II.

■ The District of Columbia Administrative Procedure Act (DCAPA) requires that "[e]very decision and order adverse to a party to the case, rendered by ... an agency in a contested case, shall be in writing and shall be accompanied by findings of fact and conclusions of law ... [which] shall be supported by and in accordance with the reliable, probative, and substantial evidence." D.C.Code § 1–1509(e) (1987). *See Citizens Ass'n of Georgetown, Inc. v. District of Columbia Zoning Comm'n,* 402 A.2d 36, 41–42 (D.C. 1979). In *Citizens Ass'n of Georgetown,* we said:

[T]he DCAPA "substantial evidence" test requires (1) the agency to make written findings of "basic facts" on all material contested issues; (2) these findings, taken together, must rationally lead to conclusions of law ... which, under the governing statute, are legally sufficient to support the agency's decision; and (3) each basic finding must be supported by evidence sufficient to convince reasonable minds of its adequacy.

*Id.* at 42. We conclude that the Commission's decision and order do not meet these criteria.

The Commission found that Garzon agreed to settle the case and to release Marriott from any liability arising from his termination for $18,000. The Commission, however, did not refer to, let alone resolve, the question of attorney's fees. According to a letter from McKnight to Garzon, McKnight had communicated to Marriott on February 18 Garzon's willingness to settle for $18,000 plus attorney's fees. But the document prepared by Marriott, while containing many additional provisions, included only one of the two provisions—the $18,000—to which Garzon, according to McKnight's letter, had agreed.[3] The Commission, therefore, failed to make a finding on an obviously material issue.

The Commission, moreover, made no findings on whether the parties had agreed to other provisions which Marriott had incorporated into its "settlement" document. While conceding to the Commission that "each individual point in [Garzon's] written release was not discussed between counsel[ ]" on February 18, Marriott contends, through an attorney's affidavit, that Marriott's counsel "represented to Mr. McKnight that any settlement would be a total settlement, and that there would be no reinstatement and no disclosure to the media." Implicitly, therefore, Marriott contends that Garzon agreed to the same. Garzon, on the other hand, attests in an affidavit that on February 18 he did not discuss with his attorney a liquidated dam-

---

**3.** Marriott's attorney at oral argument represented to the court that the provision for attorney's fees had been left out of the document inadvertently. This representation is noticeably absent from the record before the Commission and on appeal. We therefore ignore it in reaching our decision.

ages clause, a nondisclosure clause, or a waiver of reinstatement clause. There is no statement in the record from Garzon's attorney, McKnight, as to whether either Garzon or McKnight agreed to these terms.

■ It may be true that certain boilerplate provisions, not specifically discussed at a settlement conference, are so clearly inherent in a particular kind of agreement that an agency or court could properly conclude the parties had orally entered into a binding agreement that necessarily included such provisions. If, however, proffered boilerplate provisions contain what a reasonable observer would conclude are material terms of such a contract, the ruling agency or court will have to make findings as to whether the parties had agreed upon the provisions and, if they have not, whether the parties could reasonably be said to have entered into a binding agreement without them.[4] The Commission has not made such findings here.

The Commission acknowledged that Garzon had contested inclusion of at least two of Marriott's proffered provisions—nondisclosure and waiver of reinstatement—and that the parties, as a result, still had "to negotiate the wording of [a] mutually acceptable release containing the essential terms" of the agreement. The Commission apparently concluded that Marriott's additional provisions were immaterial to the settlement. Marriott, on the other hand, apparently considered these provisions indispensable and does not contend there was a binding agreement without them. It follows, therefore, that the Commission failed to resolve contested issues—the terms of the mutual release—that both parties deemed material to any binding settlement agreement.

Accordingly, the Commission's order is invalid and unenforceable for two reasons:

(1) the Commission failed to make findings of fact on several material contested issues; and (2) thus the Commission's findings that Garzon agreed, in consideration of $18,000, to settle the case and to release Marriott from all liability—without findings on other material terms of such a settlement—do not rationally lead to the Commission's conclusion of law that the parties entered into a binding agreement. *See Citizens Ass'n of Georgetown,* 402 A.2d at 42. We therefore must reverse and remand for further proceedings.

### III.

■ Finally, we must address what the proceedings on remand should entail. In concluding that the Commission has failed to resolve material contested issues, we have not yet addressed the question whether, on this record, the Commission could— or could not—have resolved all the issues in favor of a settlement. If Marriott chooses to pursue the claimed settlement on remand, therefore, the first question is whether the present record on that issue, consisting entirely of affidavits and correspondence, is sufficient for the Commission to make the necessary findings and conclusions on all contested issues, or, as Garzon contends, an evidentiary hearing with live testimony subject to cross-examination is required.

Garzon argues that this is a contested case entitling him to a hearing under the DCAPA, D.C.Code § 1–1509(b); that he accordingly received a hearing on the issues of liability and damages; that the claimed settlement agreement, inherently a part of the contested case, gave rise to disputed factual issues that also require a hearing; and that the Commission's failure to hold a hearing on the alleged settlement—ruling instead entirely by reference to the corre-

---

**4.** In *D.C. Area Community Council, Inc. v. Jackson,* 385 A.2d 185, 187 (D.C.1978) (per curiam) (quoting 1 A. CORBIN, CONTRACTS § 29 (1963)), we said it is "well settled" that

parties [may] make an enforceable contract binding them to prepare and execute a subsequent documentary agreement. In order that such may be the effect, it is necessary that agreement shall have been expressed on all

essential terms that are to be incorporated in the document. That document is understood to be a mere memorial of the agreement already reached. If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; and the so-called "contract" to make a contract is not a contract at all.

spondence and affidavits—violated Garzon's right to a hearing under § 1–509(b) and, in any event, was arbitrary, capricious, and an abuse of discretion in violation of another DCAPA provision, D.C. Code § 1–1510(a)(3)(A) (1987).

Marriott argues in response that there is no material factual dispute as to the settlement because Garzon clearly authorized his counsel to settle and "[i]t is equally clear that settlement was reached"—an argument which is belied by the record (see *supra* Part I) and which we have already rejected (see *supra* Part II). Marriott adds, however, that Garzon, in effect, waived a hearing on the settlement by failing to request one, preferring to rely instead on OHR's written response to Marriott's motion for enforcement of settlement. Under the circumstances, we believe it is too hypertechnical to decide the hearing-on-remand issue by figuring out whether a particular party had the burden to request a hearing from the Commission.[5] We agree with Garzon that, on the facts of this case, an evidentiary hearing is required on the settlement issue. We rule as a matter of law that even though no party moved for a hearing, under the particular circumstances of this case, where resolution of the factual discrepancies inherent in the documents in evidence turns on a determination of each author's credibility, a hearing is necessary so that sworn testimony, cross-examination, and demeanor evidence will provide a sufficient basis for determining whether a settlement agreement existed.

■ Relying solely on documentary evidence, the Commission stated that it "does not find [Garzon's] position that his counsel [McKnight] negotiated without authority and agreed to settlement without authority and without [Garzon's] consent and understanding to be credible." On the other hand, the Commission stated that it "finds the statement of [Garzon's] former counsel [McKnight] that he was negotiating with his client's authority and the Affidavit of [Marriott's] counsel [Trosclair] regarding this issue to be credible." Implicit in these findings is a direct conflict among the factual accounts related by Garzon, Marriott, and McKnight. The Commission was not in a position to make such credibility findings because the affidavits of Garzon and Trosclair and the unsworn correspondence from McKnight provided insufficient data for resolving their conflicting stories. The documentary evidence before the Commission was insufficient because it did not include critical information about the content of the conversations between Garzon and McKnight on the one hand, and between McKnight and Marriott's counsel on the other; the documents did not contain McKnight's sworn testimony or even his unsworn testimony concerning this issue. In short, the Commission had no reliable basis for choosing one party's account over another. Under the circumstances of this case, therefore, the Commission's findings based solely on documentary evidence

---

**5.** It is interesting to note that both parties' positions—Garzon wants a hearing, Marriott does not—have been premised on an assumption that the documentary record to date is complete enough to provide substantial evidence of a settlement, assuming the Commission makes findings on all material contested issues. Thus, Garzon has asked for a hearing to enhance the record with live testimony which, he hopes, will convince the Commission that no settlement, in fact, had been reached. Marriott, on the other hand, has argued against a hearing in the belief that the record, as is, will continue to support its claim. These, of course, were the parties' positions upon the filing of the appeal. As it has turned out, however, we have ruled that we cannot sustain the settlement for lack of sufficient findings; the case must go back to the Commission. If we were to rule, in addition, that the parties' shared assumption going into this appeal was correct—that the documentary record is sufficient to sustain the alleged settlement—then, of course, Garzon would continue to want a hearing and Marriott presumably would not. But if we were to rule that the record to date is not sufficient for that purpose, then presumably Marriott would now want a hearing while Garzon would not since, on the record to date, Marriott would have failed to sustain its burden as the moving party. The fact is, therefore, that although neither party moved for a hearing on the settlement before the Commission ruled, either party on remand presumably would want a hearing, or not want a hearing, depending on whether we conclude the documentary record is, or is not, complete enough for the Commission to make all essential findings.

were, necessarily, arbitrary and capricious. *See* D.C.Code § 1–1510(a)(3)(A).

■ We normally defer to the Commission, as fact-finder, because the hearing examiner is in the best position to observe witnesses, particularly their demeanor, and thereby assess their believability. *See Santos v. District of Columbia Dep't of Employment Servs.*, 536 A.2d 1085, 1089 (D.C.1988) (citing 3 K. DAVIS, ADMINISTRATIVE LAW TREATISE, § 17.16, at 330 (2d ed. 1980)); *Gunty v. Department of Employment Servs.*, 524 A.2d 1192, 1197 (D.C. 1987). Given the documentation provided in this case, however, without accompanying testimony at an evidentiary hearing, the examiner had no reliable basis for assessing Garzon's, McKnight's, or Trosclair's credibility; the documents, sworn and unsworn, telling different stories, lacked demeanor evidence or other indicia of truthfulness essential to perceiving what really happened in this case.

If the Commission were to limit itself to the existing record on remand, when it issues new findings of fact on all material contested issues as required by our ruling in Part II, such findings would be inherently defective for lack of an evidentiary hearing with sworn testimony and cross-examination. *See Jacobs v. District Unemployment Compensation Bd.*, 382 A.2d 282, 289 (D.C.1978) (where first hearing examiner and reviewing Board applied wrong standard for determining fraud, and determination of credibility is essential under proper, subjective standard, agency must hold second hearing so that "person who actually examines" petitioner can observe, listen, evaluate demeanor, and make particularized findings); *cf. Simmons v. District Unemployment Compensation Bd.*, 292 A.2d 797, 800 (D.C.1972) (where there was no report from referee as to whose testimony to credit on issue of employee misconduct, and where demeanor necessarily constituted substantial factor in evaluating credibility, appeals examiner and unem-

ployment compensation board could not properly determine credibility based only on audio recording of testimony). On remand, therefore, there shall be an evidentiary hearing if Marriott continues to press the alleged settlement agreement. If the proof of a settlement fails, the Commission shall assess damages based on the hearing record already completed or as augmented, in the Commission's discretion.[6]

Reversed and remanded for further proceedings consistent with this opinion.

---

6. We need not reach the other issue raised by Garzon: the applicability of the Commission's regulation requiring reduction of a settlement agreement to a writing signed by the parties before the matter is closed with approval of the Commission chairperseon. *See* 4 DCMR § 114.2, 31 D.C.Reg. 6275 (1984).