Beatrix D. **FIELDS**, William L. **Garrett**, appellants,

v.

David **McPHERSON**, Appellee.

No. 97–FM–1534.

District of Columbia Court of Appeals.

Argued Feb. 10, 1999.
Decided July 27, 2000.

**422**

Edward G. Varrone, Washington, DC, for appellants.

David P. McPherson, pro se.

Before WAGNER, Chief Judge, and STEADMAN and SCHWELB, Associate Judges.

WAGNER, Chief Judge:

Appellants, Beatrix D. Fields and William L. Garrett, respectively the legal custodian of Kimberly Nicole McPherson (Kimberly), a minor, and trustee of her estate, appeal from an order of the trial court granting a motion of appellee, David McPherson (McPherson), the child's father, for reconsideration of a consent order setting his support obligation for Kimberly. Upon reconsideration, the trial court set aside that part of the consent order which set the monthly support amount for the child and substituted an amount under the District of Columbia Child Support Guideline (Guideline),[1] taking into account, however, the personal income of Fields, an unrelated custodian. Appellants argue that the trial court erred in setting aside and revising, without a hearing, that portion of the consent order setting McPherson's monthly child support obligation. Specifically, they contend that: (1) disputed issues of material fact precluded the trial court from determining, without an evidentiary hearing, as it did, that there

was no voluntary agreement as to child support because McPherson entered the agreement under a mistake of fact; and (2) the trial court based its ruling on the erroneous premise that the Guideline required consideration of the income of the non-related custodian. We conclude that the trial court erred in vacating and revising a part of the parties' settlement agreement as embodied in the consent order and in determining that the unrelated custodian's personal income must be taken into account in setting a support obligation under the Guideline. Therefore, we reverse and remand for further proceedings consistent with this opinion.

**I.**

Kimberly McPherson is the minor child of appellee McPherson and Marietta Moore, who died on September 29, 1996. Prior to her mother's death, the child had been in the custody of her mother, who nominated her friend, appellant Fields, in her last will to be the child's custodian. After the death of her mother, Kimberly was placed in the sole legal care and custody of appellant Fields pursuant to a Voluntary Child Custody and Guardianship Agreement between Fields and McPherson, which was approved by the court on May 14, 1997. By consent, appellant Garrett, the trustee of a trust established for the child's benefit by her mother, was permitted to intervene in the proceeding. The custody arrangement established by the order of May 14th is not involved in this appeal.

McPherson had been under an order of support prior to the mother's death. In the May 14th Order, noting that there had been a material change of circumstances since the entry of the support order in 1983, the court set the matter for review on May 27th. McPherson was in arrears under the terms of that order in the amount of $16,207.10.[2] At the May 27,

---

1. D.C.Code § 16–916.1 (1997).

2. The 1983 support order required McPherson to pay as support for Kimberly the sum of $131.00 bi-weekly.

1997 hearing, the trial court inquired of the parties whether a child support amount had been reached. During discussions regarding how the child support amount would be arrived at using the Guideline,[3] the trial court indicated that Fields' income would be factored into the child support calculation. Fields' counsel objected, and the trial court encouraged the parties to try to work it out.[4] Later that day, the parties represented that they had reached an agreement and had it reduced to a consent order. Pursuant to the agreement, McPherson was to pay child support in the amount of $392.15 bi-weekly. Payment on the arrears was to be deferred until February 1, 2002, when payments of $555 per month were to begin. All payments were to be made to the trust.[5] These terms were set forth in a consent order entered by the court on May 27, 1997.

On June 6, 1997, McPherson filed a request for reconsideration of the consent order, contending that Fields' counsel misrepresented at the time he agreed to the monthly support amounts that it had been calculated including an offset for Fields' income.[6] Fields and Garrett filed an opposition, supported by an affidavit of counsel, in which they contended that the terms of the consent order for support and payment of the arrears had been reached after compromise between the parties. They contended that the agreement had been reached after discussion of the child's financial needs, amounts available from her trust and court supervised guardianship,

the amount of the arrears and terms of payment, prior level of support, and the Guideline support ranges, calculated with and without appellant Fields' personal income included. Appellants' counsel denied any misrepresentation. In addition to challenging McPherson's factual claims in support of the request for reconsideration, Fields and Garrett argued that there was no legal basis for including Ms. Field's income in the calculation for child support.

By Order dated August 15, 1997, the trial court vacated the order of support, reducing the amount of support established by the Consent Order from $392.15 to $195.00 every two weeks. The court left unchanged all other terms of the Consent Order. The court reasoned that this one provision of the agreement should be set aside because McPherson agreed to the consent order based upon a mistake of fact as to the support calculation. The court determined as a matter of law that the income of the child's custodian, even if not a biological or adoptive parent, must be taken into account in setting the amount of the support obligation for the non-custodial parent. Fields and Garrett noted a timely appeal from the trial court's order.

## II.

Appellants argue that the trial court abused its discretion in setting aside that portion of the Consent Order setting the amount of McPherson's child support obligation. They contend that, absent an evi-

3. See D.C.Code § 16–916.1, supra note 1.

4. More specifically, the discussion went as follows:

> Counsel: Wait a minute now. We don't have a custodial parent.
> Court: We have a custodial person.
> Counsel: But in her ... she doesn't have a legal support obligation. We have a trust and we have a guardianship which we can draw on but....
> Court: But she's been given legal custody. I'm factoring in her income. I don't know how else I would do that. She's been given legal custody of the child by virtue of the proceeding that I had. Now

> if she is the legal custodian there is a financial obligation that she has to the child. I know she's not the parent.

5. During this hearing, the trial court went over the agreement with all the parties to make sure it accurately stated their intent.

6. Under the Guideline, in calculating the gross income of the non-custodial parent, there is a percentage reduction "that corresponds to the custodial parent's share of total parental gross income." D.C.Code § 16–916.1(j).

dentiary hearing, the trial court based its ruling on an inadequate factual record. In addition, they contend that the court's ruling was based upon an erroneous legal premise that the gross income of an unrelated custodian must be included in calculating the non-custodial parent's support obligation under the Guideline.

A consent order is an order of the court, indistinguishable in its legal effect from any other court order, and therefore subject to enforcement like any other court order. It is also a contract, which must be construed within in its four corners. It should generally be enforced as written, absent a showing of good cause to set it aside, such as fraud, duress, or mistake. *Camalier & Buckley v. Sandoz & Lamberton,* 667 A.2d 822, 825 (D.C.1995) (quoting *Moore v. Jones,* 542 A.2d 1253, 1254 (D.C. 1988)) (citations and internal quotation marks omitted). Absent the most compelling reasons, such as fraud, duress or mistake, a voluntary settlement agreement should not be modified in favor of either party. *Id.* (citing *Suitland Parkway Overlook Tenants Ass'n v. Cooper,* 616 A.2d 346, 351 (D.C.1992)) (additional citation omitted). While application of the Guideline is presumptive, *see* D.C.Code § 16–916.1(*l*), the parties can enter into an agreement regarding the child support amount which, under certain circumstances, should be approved by the trial court as long as the amount agreed to is within the range which would have been awarded had the Guideline been used or as long as the amount agreed to is fair and just. *See* D.C.Code § 16–916.1(k)(1).[7]

Here, the trial court approved the agreement for support presented by the parties, but set a portion of it aside upon reconsideration. In doing so, the trial court accepted McPherson's version of the facts supporting his claim of mistake even though Fields and Garrett proffered facts controverting his claim. To the extent that factual issues had to be resolved, an evidentiary hearing was necessary. *See Garzon v. District of Columbia Comm'n on Human Rights,* 578 A.2d 1134, 1140 (D.C.1990); *Autera v. Robinson,* 136 U.S.App.D.C. 216, 222, 419 F.2d 1197, 1203(969). *Garzon* raised the question whether an enforceable agreement had been reached by the parties in a discrimination case pending before the Commission on Human Rights. The Commission granted the employer's motion to enforce the agreement on the basis of affidavits and correspondence, without holding a hearing. *Garzon, supra,* 578 A.2d at 1136. We held that even when no party requests a hearing, in such circumstances, "a hearing is necessary so that sworn testimony, cross-examination, and demeanor evidence will provide a sufficient basis for determining whether a settlement agreement existed." *Id.* at 1140. Similarly, in this case, each side presented different versions of the facts essential to determine whether there was an agreement. On the one side, McPherson claimed that he was misled and confused about whether the amount used to calculate support took into account Fields' gross income, and therefore the agreement was not voluntarily entered. On the other side, Fields and Garrett contended that McPherson was aware of the

---

7. D.C.Code § 16–916.1(k)(1) reads as follows:

If the parties present a consent order, an agreement that is to become an order, or a written agreement that is to be merged in an order, the judicial officer shall examine the child support provisions of the agreement, and compare the child support provisions to the guideline. If the amount of child support agreed upon is outside of the range of child support that would be ordered presumptively upon application of the guideline, the judicial officer shall determine if the agreed upon level of child support is fair and just. If the parties are represented by counsel, the judicial officer shall inquire whether the attorney informed the clients of the guideline. If the clients have not been informed of the guideline, the judicial officer shall advise the attorneys to do so. If a party is not represented by an attorney, the judicial officer shall ensure that the party is aware of the child support amount that the court would order presumptively pursuant to the guideline.

basis for the support amount to which the parties agreed. Without an evidentiary hearing, the trial court had an inadequate basis upon which to make a determination about whether the agreement resulted from a mistake such that it should be set aside.[8]

### III.

Fields and Garrett argue that the trial court erred in setting aside the child support provision of the consent order on the basis that it did not calculate the Guideline giving consideration to the personal income of Ms. Fields, as the court instructed.[9] They contend that, absent a basis to determine that an agreement is not fair and just, there is no authority requiring the parties to settle their dispute upon terms established by the court.

The Guideline contemplates that the parties may settle upon an amount of child support. *See* D.C.Code § 16–916.1(k)(1). It further recognizes that the parties may agree to an amount outside the range of support that would be ordered presumptively upon application of the Guideline. *See id.* When that occurs, the trial court must determine whether the amount set is fair and just. *Id.* Here, the trial court did not decide that the agreement was not fair and just or contrary to the child's best interest. It rejected the agreement, in part, because it was not calculated taking into account the personal income of the unrelated custodian.

 Appellants argue persuasively that in calculating the child support obligation of a non-custodial parent under the Guideline, the gross income of one who is not the biological or adoptive parent of the child, like Ms. Fields, is not proper for an

offset which applies to a non-custodial mother or father. Section 16–916(c) of the D.C.Code provides that:

> When a *father or mother* fails to maintain his or her minor child, the Court may decree that the *father or mother* pay reasonable sums periodically for the support and maintenance of the child, that the *parent* obtain medical insurance for the child whenever that insurance is available at a reasonable cost, and that the *father or mother* pay Court costs, including counsel fees, to enable plaintiff to conduct the case.

(emphasis added). If there is a duty to support under the statute, the amount is to be determined in accordance with the Guideline, D.C.Code § 16–916.1. Put another way, the Guideline establishes the method by which support is to be established provided there is a duty to support under D.C.Code § 16–916(c). The Guideline does not explicitly define the word "parent"; therefore, it should be given its plain meaning, and should "be read, whenever possible, in harmony with other provisions to which it naturally relates." *See In re L.H.,* 634 A.2d 1230, 1231 (D.C.1993). According to BLACK's LAW DICTIONARY, "parent" is defined, *inter alia,* as "[t]he lawful father or mother of a person." BLACK's LAW DICTIONARY 1114 (6th ed.1990). Similarly, § 16–916(c) uses the word "parent" interchangeably with the words "mother" and "father." There is nothing in this statute which could be read to establish a duty of support upon an individual who is not the mother or father (including adoptive mother and father) of a minor child.

 In setting out the general principles upon which the Guideline is based, in spite of the reference to "parents," it is

---

8. The case was in a posture where the trial court had to determine first whether the consent order should be set aside for mistake. For the limited circumstances in which unilateral mistake of fact may be raised as a defense to a contract, *see, e.g., Flippo Constr. Co., Inc. v. Mike Parks Diving Corp.,* 531 A.2d 263, 270–72 (D.C.1987) (adopting RESTATE-

MENT (SECOND) OF CONTRACTS §§ 153, 154 (1981)).

9. Appellants state in their brief that it is not at all clear that the trial court instructed the parties to use a specific formula in their settlement agreement. It is not necessary that we address this issue to resolve this appeal.

clear that the child's mother and father are intended. Specifically, these principles include:

> (1) The guideline shall set forth an equitable approach to child support in which *both* parents share legal responsibility for the support of the child.

> (2) The subsistence needs of *each* parent shall be taken into account in the determination of child support.

> (3) A parent has the responsibility to meet the child's basic needs as well as to provide additional child support above the basic needs level. The relative standard of living of each household shall be considered in the child support award, and a child shall not bear a disproportionate share of the economic consequences of the existence of 2 households rather than 1.

D.C.Code § 16–916.1(b) (emphasis added). The references to "both parents," and "each parent" in these provisions of the statute and the recognition that there are now two households instead of one occupied by both parents, supports the position that the reference to parents here refers to a mother and father. The foregoing sections also evidence that the Guideline is intended to assure that a child whose parents (mother and father) live separate and apart are not disadvantaged economically because they have two households. *See W.M. v. D.S.C.*, 591 A.2d 837, 842 (D.C. 1991). There is nothing in this statutory scheme which suggests that unrelated custodians, who have no statutory duty to support the child, should have their personal income taken into account when a surviving parent's support obligation is set by the court. Therefore, to the extent that the trial court's determination to set aside the parties' agreement rested upon the assumption that an unrelated custodian's personal income required an offset to the

Guideline amount in the same manner as a father or mother, it exercised its discretion based upon an improper element.[10] Thus, the trial court abused its discretion. *See Johnson v. United States*, 398 A.2d 354 (D.C.1979).

**IV.**

■ Finally, appellants argue that even assuming that McPherson could show that there was no agreement, the proper remedy was to vacate the entire agreement. We agree. A settlement agreement should be enforced according to its terms and not be modified in favor of either party, absent some compelling reasons. *Camalier & Buckley, supra,* 667 A.2d at 825. Here, the agreement had another significant provision for which the parties had bargained. Appellants agreed to defer collection of a substantial sum of money due for the support of the child. They might not have agreed to the lengthy deferral absent an acceptable agreement on the current child support amount. It is unfair to hold appellants to their agreement to delay collection of the arrearages while allowing McPherson a reduction of the current child support amount. For all of the foregoing reasons, we conclude that the trial court abused its discretion in vacating the order partially and in granting McPherson relief under Rule 60(b)(1). *See Watkins v. Carty's Automotive Elec. Ctr. Inc.*, 632 A.2d 109 (D.C.1993).

Therefore, we reverse and remand the case to the trial court for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

10. Appellants argue that since the support amount was based upon a correct application of the Guideline, *i.e.*, excluding the custodian's income, it was accurate; therefore, the original settlement agreement and consent order should be reinstated. The trial court is in

a better position to make that determination after a hearing addressed to whether McPherson entered the agreement upon a mistake of fact which would warrant setting aside the agreement.